ANNE J. McDONOUGH & another,[1] administrators, *vs.*
MARR SCAFFOLDING COMPANY & another.[2]

Norfolk. April 6, 1992. - May 13, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Repose, Statute of. Negligence,* Supplier, Statute of repose, Causing death. *Uniform Commercial Code,* Warranty. *Practice, Civil,* Summary judgment. *Words,* "Improvement to real property."

Where the statute of repose, G. L. c. 260, § 2B, barred negligence claims against a contractor who performed particularized construction services in assembling and installing bleachers at a skating rink, the plaintiffs could not avoid the statute by suing the contractor solely in its capacity as "supplier" of the bleachers. [641-642]

Where the statute of repose, G. L. c. 260, § 2B, barred negligence claims against a contractor who assembled and installed bleachers at a skating rink, the statute also barred breach of warranty claims under G. L. c. 106, § 2-314, that essentially alleged the same elements as the negligence claims. [642-643]

The statute of repose, G. L. c. 260, § 2B, was applicable to bar a wrongful death claim under G. L. c. 229, § 2. [643]

The "law of the case" doctrine does not prevent a judge from assessing the merits of a motion for summary judgment where the legal issues raised in that motion have already been considered by a different judge in the context of a summary judgment motion involving another defendant in the same case. [643-644]

Where a summary judgment record established that one of the defendants was the designer of bleachers installed at a skating rink, claims against that defendant based on negligence or deficiency in the design were barred by the statute of repose, G. L. c. 260, § 2B. [644-645]

CIVIL ACTION commenced in the Superior Court Department on April 11, 1988.

[1] John E. McDonough, Jr., each individually and as administrator of the estate of Michael William McDonough.

[2] Snyder Tank Corporation.

Motions by defendants Marr Scaffolding Company and Snyder Tank Corporation for summary judgment were heard respectively by *Gordon L. Doerfer*, J., and *Roger J. Donahue*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Stephen Moulton* (*Bruce A. Bierhans & Amy Bressler Nee* with him) for the plaintiffs.

*Samuel Goldblatt* of New York (*Thomas J. Schlesinger* with him) for Snyder Tank Corporation.

*George C. Rockas* (*Walter R. May, Jr.*, with him) for Marr Scaffolding Company.

NOLAN, J. The plaintiffs, Anne J. McDonough and John E. McDonough, Jr., administrators of the estate of Michael William McDonough, appeal from the award of summary judgment in favor of the defendant Marr Scaffolding Company (Marr) on their amended complaint which alleged negligence, breach of warranty, and wrongful death under G. L. c. 229, § 2 (1990 ed.), in connection with Marr's supplying and installation of bleachers in the Randolph Skating Rink (rink) in 1972. A Superior Court judge awarded summary judgment to Marr on the basis of G. L. c. 260, § 2B (1990 ed.), the statute of repose.

The amended complaint also sought recovery against the defendant Snyder Tank Corporation (Snyder) in its capacity as manufacturer of the bleachers and supplier of the bleachers to Marr. Snyder moved for summary judgment, following the award of summary judgment to Marr, also relying on the statute of repose as grounds therefor. A Superior Court judge denied Snyder's motion and Snyder appealed from that decision to the Appeals Court. A single justice of that court ordered Snyder's appeal "consolidated with any other appeal." We granted the plaintiffs' application for direct appellate review. We affirm the decision awarding summary judgment to Marr, vacate the order denying summary judgment to Snyder, and direct the entry of an order granting Snyder's motion for summary judgment.

We deal first with the plaintiffs' appeal from the award of summary judgment to Marr. "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991), and cases cited. In our opinion, the judge correctly ordered summary judgment for Marr on the basis of the statute of repose. We set forth the undisputed material facts of this case as found by the judge.

In 1972, Marr entered into an agreement with the town of Randolph to install two sets of bleachers in the town's skating rink. At Marr's request, Snyder specifically designed the bleachers for the rink, manufactured the component parts, and shipped them to Marr. In accordance with Snyder's plans, Marr assembled and erected two bleacher units which measured 102 feet and seventy-two feet in length, respectively, and which were eight rows high. The project took Marr between two and three weeks to complete. In 1980, Marr installed "riserboards" on a section of the bleachers behind the officials' box. Marr finished this work on February 5, 1980.

On April 11, 1985, four year old Michael William McDonough attended his brother's hockey game at the rink. Michael watched the game while sitting on the bleachers. At some point, Michael slipped between a seat and a foot rest of the bleachers, and fell to the ground. Michael sustained fatal head injuries.

In 1988, the plaintiffs commenced this action alleging that Michael's death resulted from Marr's negligent assembly and installation of the bleachers. Marr moved for summary judgment, asserting that G. L. c. 260, § 2B, the statute of repose, barred the plaintiffs' suit. Specifically, Marr argued that its activities with respect to the assembly and installation of the bleachers were "construction" activities as contemplated by § 2B which it completed in 1972, well over six years prior to the accident. Therefore, Marr argued, any work it performed

relating to the bleachers could not provide the basis of a tort action pursuant to c. 260, § 2B. The plaintiffs subsequently amended their complaint to state a claim against Marr as supplier of the bleachers, claiming breach of warranty on the grounds that the bleachers were a defective and unreasonably dangerous product, lacking riserboards to block the gap between the seat and the foot rest.

The judge awarded summary judgment to Marr, agreeing that the plaintiffs' action was barred by G. L. c. 260, § 2B.[3] The judge concluded that the plaintiffs could not escape the effect of the statute of repose by attempting to limit Marr's role in the project to that of mere supplier of goods. The judge found that Marr assembled and installed the uniquely configured bleachers in the rink. The judge further decided that this work constituted "construction" activity of the type contemplated by § 2B, the result of which was "an improvement to real property" under § 2B. For these reasons the judge held that the statute of repose encompassed Marr's activities and that the plaintiffs' action was barred thereunder.

The judge rejected the plaintiffs' attempt to avoid the operation of the statute of repose by amending the complaint to state a claim against Marr for breach of warranty under G. L. c. 106, § 2-314 (1990 ed.). Quoting *Dighton* v. *Federal Pac. Elec. Co.*, 399 Mass. 687, 691 n.6 (1987), the judge noted that "any claim for breach of warranty pursuant to G. L. c. 106, § 2-314 (1984 ed.) states a cause of action which sounds, like negligence, in tort and not in contract." Since § 2B applies to "[a]ction[s] of tort for damages," the judge held that the plaintiffs' claims under c. 106, § 2-314, also are barred by the statute of repose.

---

[3]General Laws c. 260, § 2B (1990 ed.), states, in relevant part: "Action of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property . . . shall be commenced only within three years next after the cause of action accrues; provided, however, that in no event such actions be commenced more than six years after the earlier of the dates of: (1) the opening of the improvement to use; or (2) substantial completion of the improvement and the taking of possession for occupancy by the owner."

In addition, the judge dismissed the plaintiffs' suggestion that a material issue of fact existed as to whether the bleachers constituted "an improvement to real property" so as to bring their action within the scope of § 2B. The plaintiffs argued that the bleachers could not be classified as a real property improvement, since they are not "permanent" structures, but rather may be disassembled and removed from the rink. The judge stated that the bleachers do not have to be permanently affixed to the real property in order to be considered "an improvement to real property" within the meaning of § 2B. Rather, the judge ruled, it is sufficient if the improvement is a "betterment of real property." *Dighton, supra* at 697 n.12, quoting Webster's Third New Int'l Dictionary 1138 (1971). The judge concluded that the bleachers enhanced the usefulness of the rink and increased its value; therefore, the bleachers may properly be classified as an improvement to real property within the meaning of § 2B. See *Conley* v. *Scott Prods., Inc.,* 401 Mass. 645, 647 (1988).

Lastly, the judge considered the plaintiffs' assertion that a wrongful death action under G. L. c. 229, § 2, is not subject to the provisions of G. L. c. 260, § 2B. The plaintiffs argued that only the repose provision for medical malpractice actions applies to wrongful death cases. However, the judge held that the specific reference to the medical malpractice repose provision in the wrongful death statute did not signal the inapplicability of all other repose statutes to that cause of action.

The plaintiffs challenge each of the judge's conclusions, as well as the rulings supporting them. First, the plaintiffs argue that the judge erred in granting summary judgment to Marr in light of our decision in *Sullivan* v. *Iantosca,* 409 Mass. 796 (1991), a case decided after the entry of summary judgment for Marr. The plaintiffs assert that *Sullivan* supports their position that the statute of repose does not protect a supplier or manufacturer of goods from being sued for its tortious acts, even where that supplier also was a contractor who performed acts which were protected under the statute, such as design and construction activities. More particularly,

the plaintiffs claim that, according to *Sullivan*, the statute does not prevent an action against Marr in its role as supplier of a defective and unreasonably dangerous product, i.e., bleachers without riserboards, even though Marr acted as a contractor for the project in assembling and installing the bleachers. We do not agree with the plaintiffs' arguments.

Contrary to the plaintiffs' suggestion, the *Sullivan* case does not hold that a contractor, whose activities unquestionably fall within the scope of § 2B, loses the protections of the statute of repose by acting also as a supplier of goods in the course of performing as a contractor. In *Sullivan*, we considered the issue whether the statute of repose barred a claim for deceit against the seller of a house, where the seller also had acted, in some representative capacity, as the builder of the house and, therefore, was protected under the statute for any claim based on negligence in design or construction. *Sullivan, supra* at 799. We held that the statute did not bar a claim for deceit against the seller because § 2B "grants protection to designers, planners, builders, and the like . . . [but not] people who sell real estate." *Id.* Sellers of real estate, we suggested, are not included in the class of persons protected from suit under the statute, essentially for the same reasons why materialmen and suppliers are excluded from the protections of the statute. Suppliers and manufacturers are not included within the class of persons protected from suit under the statute, largely because those classes of persons can maintain a high quality of performance through standardized production, unlike designers and builders, whose work relies heavily on individual expertise. *Klein* v. *Catalano*, 386 Mass. 701, 716-717 (1982). We elaborated further on the scope of the repose statute in *Dighton* v. *Federal Pac. Elec. Co.*, 399 Mass. 687, 696 (1987), stating that "§ 2B was intended not to apply to mere suppliers of standardized products, but only to the kinds of economic actors who perform acts of 'individual expertise' akin to those commonly thought to be performed by architects and contractors — that is to say, to parties who render particularized services for the design and construction of particular improvements to particu-

lar pieces of real property." Significantly, we concluded in *Dighton, supra,* that a supplier of an allegedly defective circuit breaker panel could not claim the protections of § 2B, since, as a supplier, it fell "outside that class of economic actors which § 2B was intended to protect" and did not claim to have rendered any particularized services with respect to design or construction of the building in which the component it supplied had been installed.

Applying these principles to the matter at hand, we conclude that Marr cannot be sued solely in its capacity as a supplier of the bleachers. It is undisputed that, in addition to whatever acts Marr carried out as a supplier of the bleachers to the rink, it performed particularized construction services in assembling and installing the bleachers. Indeed, it seems abundantly clear that Marr's primary function on the bleacher project was that of contractor, and any role it took on as a supplier was incidental thereto. The result urged by the plaintiffs is one which would undermine the purpose of the statute by allowing them to maintain a cause of action against Marr beyond the date of repose simply by identifying Marr only by reference to its limited status as a supplier. The Legislature did not intend such a result. We agree with the judge that, even if Marr acted as a supplier in the context of the rink project, it engaged primarily in the assembly and installation of the bleachers, which are the types of construction activities covered by § 2B.

The plaintiffs assert that the statute of repose does not bar claims based on breach of warranty under G. L. c. 106, § 2-314. They claim that the bleachers were a defective product which was incorporated into real property and, therefore, c. 260, § 2B, does not prevent the plaintiffs from commencing a tort action against Marr, as supplier of defective bleachers. This argument is without merit. The plaintiffs' breach of warranty claims essentially allege the same elements as the negligence claims, and, hence, the warranty claims are barred by the statute of repose as well. *Klein, supra* at 719. To allow the plaintiffs to recast their negligence claim in the form of a warranty claim in order to circumvent the opera-

tion of the repose statute would nullify the purpose of the repose provision altogether. See *Klein, supra* at 710 (statute represents "a balance between the public's right to a remedy and the need to place an outer limit on the tort liability of those involved in construction" [footnote omitted]).

The plaintiffs, citing *Dighton, supra* at 699, argue that the judge erred in deciding that the statute of repose applies to wrongful death actions. The plaintiffs assert that the statute of repose applies only to "[a]ction[s] of tort" and not to actions for "death," so there is no clear implication that the Legislature intended that the statute apply to wrongful death cases. We are not persuaded by this argument. A wrongful death action is, without question, an "[a]ction of tort" as that phrase is used in the statute of repose. The express language of G. L. c. 229, § 2, makes clear that damages for wrongful death "shall be recovered in an *action of tort* by the executor or administrator of the deceased" (emphasis supplied). The plaintiffs also contend that the specific reference in the wrongful death statute to the statute of repose for medical malpractice actions implicitly indicates that only the repose provision applicable to medical malpractice cases applies to wrongful death actions. The plaintiffs' argument is without merit. The judge correctly ruled that the Legislature included the medical malpractice repose provision in G. L. c. 229, § 2, as part of a comprehensive revision of the laws relating to medical malpractice and not as an expression of the legislative intent to exclude the applicability of all other statutes of repose to wrongful death cases. Indeed, we previously have held that the provision for tolling the applicable statute of limitations for minor plaintiffs applies to actions for wrongful death, although no specific reference to that provision appears in the wrongful death statute. *Gaudette* v. *Webb*, 362 Mass. 60, 71 (1972). For all the foregoing reasons, we affirm the judge's decision awarding summary judgment to Marr.

We turn now to consider Snyder's claim that another judge of the Superior Court erred in denying its motion for summary judgment based on the statute of repose. Snyder

argues that the judge was required to rule in its favor under the doctrine of "the law of the case," which, Snyder claims, was established in this case to be that the plaintiffs' claims are barred by the statute of repose. We do not agree with this argument.

The doctrine of the "law of the case" does not prevent a judge from assessing the merits of a motion for summary judgment simply because the legal issues raised in that motion have already been considered by another judge in the context of a summary judgment motion involving another defendant in the same case. It is sufficient to note that the factual issues raised in the two motions differed significantly from each other, at least insofar as Snyder and Marr performed in distinct capacities on the rink project. Therefore, the applicability of the statute of repose in Snyder's case would depend on an independent determination of its status with respect to the project. It is possible that the judge denied Snyder's motion on the basis that a genuine issue of material fact existed with respect to whether Snyder's activities were protected under the statute. Therefore, we cannot say that it was appropriate, much less required, that the judge deciding Snyder's summary judgment motion adopt the conclusions of the judge who heard Marr's motion for summary judgment.

Snyder further argues that it was entitled to summary judgment on the undisputed facts and as a matter of law because, unlike the supplier of the circuit breaker panel in *Dighton*, Snyder did not act as a "mere supplier" with respect to the project. Snyder argues that the summary judgment record clearly demonstrates that it designed the bleacher units specifically for the rink and that the statute of repose protects it from suit based on negligence or deficiency in the design — precisely what the plaintiffs are now alleging. The plaintiffs present the same arguments against Snyder's assertions as they did with regard to Marr on this point. Snyder is entitled to the benefit of the statute of repose for the same reasons advanced above with respect to Marr. The plaintiffs' claims are based on the notion that Snyder negli-

gently designed the bleachers. As such, the claims are barred by the statute of repose for the reasons stated earlier in this opinion. The judge should have allowed Snyder's motion for summary judgment.

The award of summary judgment to Marr is affirmed and the order denying summary judgment to Snyder is vacated. Judgment is to enter in favor of Snyder on its motion for summary judgment.

*So ordered.*