ALBERT FINE & others[1] *vs.* HUYGENS, DIMELLA, SHAFFER & ASSOCIATES & others.[2]

No. 99-P-2007.

Suffolk. November 26, 2002. - February 20, 2003.

Present: PERRETTA, DUFFLY, & GREEN, JJ.

*Limitations, Statute of. Warranty. Sale,* Warranty. *Uniform Commercial Code,* Warranty. *Repose, Statute of. Consumer Protection Act,* Availability of remedy, Warranty.

On claims alleging breach of warranty under art. 2 of the Uniform Commercial Code (UCC), arising from defects and deficiencies in the design of exterior wall panels and window systems in a condominium development, resulting in leaks, summary judgment materials stated a claim for liability that could be grounded in tort, and further, where governing provisions of the UCC imposed a three-year period of limitation, and the claims were filed in December, 1993, more than three years after the May, 1990, accrual date, they were properly dismissed. [400-401]

In an action on claims premised on the design, manufacture, and supply to a condominium development project of exterior wall panels and window systems, summary judgment materials reflected that a defendant that custom-manufactured wall panels specifically for the project pursuant to the specifications of architects and engineers, and that collaborated in the design and erection of the panels, was entitled to the protection of G. L. c. 260, § 2B, a six-year statute of repose, and dismissal of all tort-based claims against it [401-403]; however, a second defendant that supplied stock windows to the project, and that was not acting in the capacity of a design professional, was not entitled to the protection of the six-year statute of repose [403-404].

Claims under G. L. c. 93A based upon alleged breaches of the implied warranty of merchantability in the design of exterior wall panels and window

[1]Josephine Colarusso, Bertram Lipman, Barbara McDonald, and Darrell Mook, individually, and as they constitute the board of managers of the St. George Seaside Condominiums and Beach Club Association.

[2]Architectural Cladding Systems; Wrenn Construction Corporation; Chapman Waterproofing Co.; HJP Construction Co.; Peregrine Mechanical, Inc.; Panitas/Zade Associates, Inc. (also referred to in the complaint as Panitsas/ Zade Associates, Inc.); PDM Mechanical Contractors, Inc.; Thompson & Lichtner Co., Inc.; Three Rivers Aluminum Company, doing business as Traco; Coastal G.F.R.C., Inc.; and Howard Industries, Inc.

systems in a condominium development, that were treated as asserting actions for tort within the meaning of G. L. c. 260, § 2B, a six-year statute of repose, were (1) barred with respect to a defendant that acted in the capacity of a design professional, where it was added to the complaint more than six years after the project's substantial completion; (2) not barred with respect to a defendant against which suit was commenced within the repose period, where the complaint against it was filed within the four-year limitations period applicable to c. 93A and was timely; and (3) not barred with respect to a defendant that was not acting in the capacity of a design professional and was not entitled to protection under the statute of repose, where the claim asserted against it in a third amended complaint related back to the original pleading and was timely filed. [404-405]

CIVIL ACTION commenced in the Superior Court Department on December 31, 1993.

The case was heard by *Vieri Volterra,* J., on motions for summary judgment.

Following review by this court, 55 Mass. App. Ct. 1114 (2002), a rehearing was had before a panel of the court.

*John A. Donovan, III,* for Architectural Cladding Systems.

*Thomas C. Federico* for Coastal G.F.R.C., Inc.

*James E. Harvey, Jr.,* for Howard Industries, Inc.

*Seth H. Emmer,* for the plaintiffs, submitted a brief.

DUFFLY, J. After our decision in this matter, see 55 Mass. App. Ct. 1114 (2002), issued pursuant to Appeals Court Rule 1:28, as amended, 46 Mass. App. Ct. 1001 (1998), we granted the petitions for rehearing submitted by three of the defendants, and heard argument thereon on November 26, 2002. Our earlier decision, reversing in part the dismissal of the plaintiffs' claims as not timely filed, was in connection with the plaintiffs' appeal from entry of summary judgment in favor of nine of twelve defendants who played varying roles in the planning and construction of a condominium development, the St. George Seaside Condominiums and Beach Club Association (St. George). In their complaint, the plaintiffs alleged (among other things not relevant at this stage of the appeal) that defects and deficiencies in the design of exterior wall panels and window systems of the St. George resulted in leaks to their condominium units and common areas.

The motion judge dismissed the plaintiffs' claims on the basis that the December 31, 1993, complaint was filed more than three years after June, 1988, when the plaintiffs first observed water leaks in their units. In our earlier decision, we determined that, based on the summary judgment record, the plaintiffs were not put on notice as to the likely cause of their injury until May, 1990, when surface irregularities in the window seals and the glass fiber reinforced concrete (GFRC) panels became apparent.[3] We affirmed the dismissal of negligence claims against all defendants, including Coastal G.F.R.C., Inc. (Coastal); Architectural Cladding Systems (ACS)[4]; and Howard Industries, Inc. (Howard), because those claims were barred by the statute of limitations under either the June, 1988, or the May, 1990, date. However, we reversed the dismissal of counts alleging breach of implied warranty and unfair trade practices under G. L. c. 93A against ACS, Coastal, and Howard (the only defendants against whom such claims were made), and did not consider whether the claims against Coastal and Howard were also barred by operation of G. L. c. 260, § 2B, the statute of repose applicable to improvements to real property.

*The petitions for rehearing.* The defendants Coastal, Howard, and ACS petitioned for rehearing as to our disposition on counts IV, V, VII, VIII, X, XI, XXV, and XXVI of the complaint.[5] Coastal and Howard ask that we now address whether the statute of repose bars suit against them on the breach of implied warranty and G. L. c. 93A counts. ACS and Howard argue that even if not barred by operation of the statute of repose, the breach of implied warranty claims must be dismissed because they depend on the same facts and elements as the negligence claims, and are therefore subject to a three-year statute of limitations. ACS and Howard further argue that because the breach of warranty claims must be dismissed as untimely, the G. L. c. 93A claims, which are premised on these claims, also fail.

---

[3]The defendants do not ask that we reconsider this conclusion.

[4]There were also separate claims against ACS as successor to Coastal.

[5]Our decision in this opinion supplements and amends our earlier disposition as to these counts. Our earlier disposition as to all other counts, both against these defendants and the remaining defendants, is to stand.

*Discussion.* 1. *Breach of implied warranty.* We agree that the breach of implied warranty claims must be dismissed as untimely.

The plaintiffs' counts alleging breach of warranty state two theories of liability: that the defendants are in breach of (1) the implied warranty of merchantability; and (2) the implied warranty of fitness for a particular purpose. "The appropriate statute of limitations to apply to a breach of warranty claim under art. 2 of the Uniform Commercial Code is found by determining the nature of that particular breach of warranty claim." *Bay State-Spray & Provincetown S.S., Inc.* v. *Caterpillar Tractor Co.*, 404 Mass. 103, 110 (1989).[6]

With respect to the breach of an implied warranty of merchantability, "breach of this implied warranty provides a cause of action in tort where the harm is a physical injury to person *or property* rather than an 'economic' loss of value in the product itself (for which contractual remedies must still be pursued)" (emphasis added). *Commonwealth* v. *Johnson Insulation*, 425 Mass. 650, 653 (1997) (upholding liability based on implied warranty of merchantability for costs of remediation activities in connection with removal of asbestos-containing materials installed in plaintiff's buildings). Cf. *Berish* v. *Bornstein*, 437 Mass. 252, 268 (2002) (negligence claim improperly dismissed under "economic loss doctrine" where claim gave rise to reasonable inference that "enumerated 'defects and deficiencies' caused property damage beyond the defects in the condominium units themselves"). Consistent with *Commonwealth* v. *Johnson Insulation, supra,* we conclude that the plaintiffs' summary judgment materials state a claim for liability that could be grounded in tort. See *Aldrich* v. *ADD Inc.*, 437 Mass. 213, 222 (2002). Governing provisions of the Uniform Commercial Code (UCC) impose a three-year period of limitation. G. L. c. 106, § 2-318. Because the claims were filed

---

[6]The Uniform Commercial Code (UCC) applies to the extent claims are lodged against the defendants as manufacturers or suppliers of goods (e.g., window systems or exterior wall panels). *Rosario* v. *M.D. Knowlton Co.*, 54 Mass. App. Ct 796, 803 n.7 (2002).

in December, 1993, more than three years after the May, 1990 accrual date, they were properly dismissed.[7]

Our conclusion does not, however, require that we also dismiss the G. L. c. 93A claims as to each defendant. We first consider whether, as to Coastal and Howard, the c. 93A claims are barred by application of the statute of repose.

2. *Statute of repose.* The statute of repose, see G. L. c. 260, § 2B, as amended by St. 1984, c. 484, § 53, bars claims against design professionals made more than six years following the "substantial completion of [an] improvement [to real property] and the taking of possession for occupancy by the owner." Nor can such protected actors be added to a complaint after the six-year period by way of "relation back" to the date of the original complaint.[8] Coastal and Howard were added as party defendants in the plaintiffs' third amended complaint, filed in November, 1995, some seven years after substantial completion of the project in September, 1988. Thus, § 2B would bar claims against them to the extent the defendants were acting as design professionals.[9]

The repose statute applies to those who perform acts of

---

[7]Although in our decision pursuant to rule 1:28, we raised a question as to whether the breach of warranty claims were more akin to tort-based claims (with a three-year statute of limitations) or contract-based claims (with a four-year statute of limitations), the plaintiffs made no argument in their original brief or on rehearing that the longer period applies. We therefore consider the argument waived. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); *Commonwealth* v. *Gagnon*, 387 Mass. 768, 769 (1982).

Nevertheless, we note that the accrual date for contract claims is the date "the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." G. L. c. 106, § 2-725. The plaintiffs have offered no materials refuting the defendants' assertions that such a breach, if any, occurred not later than September 1, 1988, the date of substantial completion of the St. George. Since this date precedes the December 31, 1993, commencement of the action by more than five years, the claims would be dismissed even under a four-year statute of limitations.

[8]See *Tindol* v. *Boston Hous. Authy.*, 396 Mass. 515, 519 (1986); *James Ferrera & Sons* v. *Samuels*, 21 Mass. App. Ct. 170, 173 (1985) (Mass.R.Civ.P. 15[c], 365 Mass. 762 [1974], does not permit addition of defendant after period of statute of repose has expired because "[t]he bar of a statute of repose is absolute, whereas the bar of a statute of limitations is conditional").

[9]We need not decide whether ACS is a protected actor under G. L. c. 260, § 2B, because ACS was named as a defendant in the original complaint, filed in December, 1993, well within the six-year period of repose.

" 'individual expertise' akin to those commonly thought to be performed by architects and contractors — that is to say, . . . parties who render particularized services for the design and construction of particular improvements to particular pieces of real property." *Dighton* v. *Federal Pac. Elec. Co.,* 399 Mass. 687, 696, cert. denied, 484 U.S. 953 (1987) (manufacturer of defective circuit breaker panel who did not claim to have rendered any particularized services with respect to design or construction of building in which component it supplied was installed could not claim protections of § 2B). "The Legislature enacted G. L. c. 260, § 2B, to limit the liability of architects, engineers, contractors, or others involved in the design, planning, construction, or general administration of an improvement to real property." *Klein* v. *Catalano,* 386 Mass. 701, 720 (1982).[10]

In the instant matter, the plaintiffs' claims are premised on the design, manufacture, and supply to the project of the GFRC exterior wall panels (in the case of Coastal) and window systems (in the case of Howard). The parties dispute whether these defendants are "mere suppliers of standardized products, . . . [or whether they] perform[ed] acts of 'individual expertise' akin to those commonly thought to be performed by architects and contractors." *Dighton* v. *Federal Pac. Elec. Co.,* 399 Mass. at 696.

Thus, whether the statute of repose bars claims against Coastal or Howard depends upon whether the summary judgment record discloses that "there is no genuine issue of material fact as to whether the defendants were involved in the design, planning, construction or general administration of [an improvement to real property]." *Rosario* v. *M.D. Knowlton Co.,* 54 Mass. App. Ct. 796, 799 (2002).

(a) *Coastal.* Coastal manufactured and supplied the GFRC panels that comprised the "skin" of the St. George. Suppliers of building components have been determined to be protected ac-

---

[10]This conclusion is further supported by the fact that "when § 2B was enacted in 1968, the liability of manufacturers and suppliers for injuries caused by the failures of their products was already encompassed to a certain extent within the General Laws. See G. L. c. 106, §§ 2-314 and 2-318 (implied warranty of merchantability)." *Dighton* v. *Federal Pac. Elec. Co.,* 399 Mass. at 698-699.

tors entitled to protection by the repose provision of § 2B only where the role of supplier was incidental and the actor's primary function was to provide individual expertise and particularized services relating to design and construction. See *McDonough* v. *Marr Scaffolding Co.*, 412 Mass. 636, 642 (1992) (defendant protected by § 2B where its role of supplying bleachers was incidental to primary function of performing particularized construction services in assembling and installing bleachers). See also *Rosario* v. *M.D. Knowlton Co.*, 54 Mass. App. Ct. at 802 (§ 2B protection extended to supplier of lift who provided individual expertise and particularized services, collaborated in design of lift, supervised installation, and specified and supervised building modifications).

The summary judgment materials reflect that GFRC[11] is not a fungible product designed for public sale or for general use, but is a component of an exterior wall system that Coastal custom-manufactured specifically for the St. George project pursuant to the specifications of architects and engineers, and that Coastal collaborated in the design and erection of the panels. *Rosario* v. *M.D. Knowlton Co.*, 54 Mass. App. Ct. at 801. Coastal, therefore, is entitled to the protection of the statute of repose and all tort-based claims against it must be dismissed.

(b) *Howard.* Howard was the supplier of windows, and it concedes that it supplied stock windows to the project. Even assuming its further claim to be undisputed that "the sill receptors were custom-made," we disagree that such modifications to mass produced products are the sort of services that the Legislature intended to protect. Cf. *Cosme* v. *Whitin Machine Works, Inc.*, 417 Mass. 643, 648 (1994) (noting that "Massachusetts has not limited products liability actions with a statute of repose"). Many products that are mass produced may also be produced to order, or cut to fit the needs of a particular project, but this alone is not sufficient to bring a supplier within the purview of § 2B. Compare *Dighton* v. *Federal Pac. Elec. Co.*,

---

[11]Materials in the record describe GFRC as composed of a cement slurry consisting of cement, sand, water and additives, created to a specific depth (generally one-half or three-quarter inches thick). The GFRC panels consist of a face layer and a base layer; steel studs, wall cavity, and GFRC make up the typical, prefabricated wall panels, which vary in size.

399 Mass. at 698. Contrast *McDonough* v. *Marr Scaffolding Co.*, 412 Mass. at 642; *Rosario* v. *M.D. Knowlton Co.*, 54 Mass. App. Ct. at 801. Because Howard was not acting in the capacity of a design professional, it is not entitled to the protection of the statute of repose.

We now consider whether the G. L. c. 93A claims were timely filed against each of the defendants.

3. *General Laws c. 93A.* Each G. L. c. 93A claim is based, inter alia, upon an alleged breach of the implied warranty of merchantability. As we have noted, the warranty claims are tort-like in nature; we therefore treat the c. 93A claims as also asserting actions for tort within the meaning of G. L. c. 260, § 2B. Cf. *Beaconsfield Townhouse Condominium Trust* v. *Zussman*, 49 Mass. App. Ct. 757, 761 n.12 (2000). With respect to Coastal (which is entitled to the protection of the statute of repose), the c. 93A claim is barred because Coastal was added to the complaint in 1995, more than six years after the project's substantial completion in 1988.

We now consider whether the c. 93A claims were timely as to ACS (against which suit was commenced within the repose period) and Howard (to which the statute of repose is inapplicable). Claims asserting unfair and deceptive trade practices under c. 93A are governed by a four-year limitations period with an accrual date that is determined "by the same principles as govern the determination of the underlying actions." *Schwartz* v. *Travelers Indem. Co.*, 50 Mass. App. Ct. 672, 678 (2001), quoting from *Hanson Hous. Authy.* v. *Dryvit Sys., Inc.*, 29 Mass. App. Ct. 440, 448 (1990). Therefore, as to the c. 93A claims, the statute begins to run from the date of discovery of the defects, which we determined was May, 1990, a date that is less than four years preceding the initial filing of the complaint in December, 1993.[12]

We reject the contention that a c. 93A claim necessarily fails

---

[12]We recognize that application of G. L. c. 93A's four-year statute of limitations to tort claims otherwise governed by a three-year limitations period has the effect of extending such claims' viability by one year, even when the underlying tort actions are dismissed because not timely filed. "[R]ecovery under the Consumer Protection Act should be 'in addition to, and not an alternative to, traditional tort and contract remedies' " (citations omitted). *Calimlim* v. *Foreign Car Center, Inc.*, 392 Mass. 228, 236 (1984). Our decision does not

because the underlying claim upon which it depends has been dismissed as not timely filed. Compare *Saveall* v. *Adams*, 36 Mass. App. Ct. 349, 354 (1994) (c. 93A claim dismissed "quite apart from any question of timeliness," but because allegations did not provide basis for finding defendants individually liable). The fact that an underlying claim is dismissed for lack of timeliness does not require dismissal of the c. 93A claim, as to which a longer limitations period may be applicable, as is the case here. Compare *Palermo* v. *Brennan*, 41 Mass. App. Ct. 503, 504 n.2 (1996). The c. 93A claim need only be dismissed if, under c. 93A's four-year limitations period and the accrual date applicable to the particular c. 93A claim, it was not timely filed. Here, the December, 1993, complaint against ACS was filed within the four-year limitations period applicable to the c. 93A claim and was timely.[13]

Because we have determined that Howard is not entitled to protection under the statute of repose, the c. 93A claim asserted against it in the third amended complaint relates back to the original pleading. Howard does not contend otherwise. The c. 93A claim against Howard was thus timely filed.[14]

*Conclusion.* The disposition in our memorandum and order pursuant to rule 1:28 is revised as follows: we affirm the judgment dismissing counts IV (breach of warranty against ACS), VII (breach of warranty against ACS as Coastal's successor), X (breach of warranty against Coastal), XI (G. L. c. 93A against Coastal), and XXV (breach of warranty against Howard).

In all other respects, the disposition in our earlier unpublished

speak to the merits of the c. 93A claims, matters not addressed by the motion judge.

[13]We do not intend our decision in *Rosario* v. *M.D. Knowlton Co.*, 54 Mass. App. Ct. at 803, to suggest otherwise. In *Rosario*, the c. 93A defendants were protected actors under the statute of repose and there was no dispute that the c. 93A claim was filed after the six-year repose period. Compare our discussion concerning Coastal, *supra*. To the extent c. 93A claims in *Rosario* were premised on contract claims of express warranty, the filing was also late as measured against c. 93A's four-year limitations period, coming some ten years after the accrual date (the date of breach). In the instant matter, the complaint against ACS was filed both within the four-year statute of limitations associated with G. L. c. 93A and the six-year statute of repose period.

[14]See note 13, *supra*. Unlike the G. L. c. 93A defendants in *Rosario*, Howard is not a protected actor under the statute of repose.

memorandum and order is to stand. The judgment of dismissal is affirmed as to all claims asserted against defendants Huygens, DiMella, Shaffer & Associates; Wrenn Construction Corp; Chapman Waterproofing Co.; HJP Construction Co.; Peregrine Mechanical, Inc.; and Thompson & Lichtner Co., Inc. The judgment of dismissal is affirmed as to counts III, VI, IX, and XXIV asserted against defendants Coastal, ACS, and Howard; it is reversed as to counts V (G. L. c. 93A against ACS), VIII (G. L. c. 93A against ACS as Coastal's successor[15]), and XXVI (G. L. c. 93A against Howard).

*So ordered.*

---

[15]Since the motion judge dismissed all claims against both Coastal and ACS, he made no specific determination on the viability of the G. L. c. 93A claim against ACS as corporate successor to Coastal. As the parties have not briefed the issue, we decline to make that determination for the first time on appeal.