Rufo, Robert C., J.
The plaintiff, Sindi Shiner-Spagone (“Shiner-Spagone”), administratrix of the estate of Skylur Spagone, filed wrongful death, loss of consortium, and attractive nuisance claims against defendants Kris Fabroski[2] and Kerri Fabroski (collectively “the Fabroskis”), arising from the accidental drowning death of Skylur Spagone on May 15, 2000. Shiner-Spagone then added wrongful death claims against defendants Randall Ellis and Ronald Ellis (collectively “the Ellises”).[3] Before the court is the Ellises’ Motion for Summary Judgment. For the reasons stated below, the Ellises’ motion is ALLOWED.
BACKGROUND
The following facts, viewed in the light most favorable to Shiner-Spagone, are as follows.
In 1999, the Fabroskis retained Ronald and Randall Ellis to construct a fence around their newly-installed pool. At that time, the Ellises owned and operated Ron’s Fencing, a fencing installation company. From September 10, 1999 through September 16, 1999, the Ellises purchased fencing material for the project, including posts, pvc caps and hinges, bolts, and a latch assembly from Master Halco in West Bridgewa-ter. The Ellises then installed the fence on the evenings of September 14 and 16, 1999.[4] The parties agree that the Ellises had no further contact with the Fabroskis concerning the fence after its installation. On May 15, 2000, Skylur Spagone and Sindi Shiner-Spagone were visiting the Fabroskis’ residence when Skylur entered the pool area, slipped on the pool cover, and drowned in several inches of accumulated water.
Shiner-Spagone instituted the current action against the Fabroskis on April 17, 2003. On November 8, 2005, she filed a motion to amend the complaint to add the Ellises as defendants. This court (Rufo, J.) ordered Shiner-Spagone to first serve her motion on the Ellises. Shiner-Spagone re-filed her motion to amend on December 16, 2005.
In her second amended complaint, Shiner-Spagone asserts wrongful death claims against Ronald Ellis (Count X) and Randall Ellis (Count XI) pursuant to G.L.c. 229, §2. Ronald and Randall Ellis filed their answers on January 25, 2006 and January 27, 2006, respectively.
DISCUSSION
This court grants summary judgment where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles it to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 *631 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991).
The Ellises argue that Shiner-Spagone’s claims against them are barred by the statute of repose set forth in G.L.c. 260, §2B, governing claims against improvers of real property. The statute sets an absolute six-year limit within which a plaintiff may bring tort claims “arising out of any deficiency or neglect in the design, planning, construction, or general administration of an improvement to real property.”[5] The six-year statutory period begins on either the date of the “opening of the improvement to use,” or the “substantial completion [date] of the improvement and the taking of possession for occupancy by the owner.” Id. The Ellises contend that because they finished installing the fence on September 16, 1999, Shiner-Spagone’s claims naming them as defendants, first initiated on November 8, 2005, are not timely. Shiner-Spagone, however, counters that the Ellises are not within the class of actors contemplated by the statute and therefore cannot take advantage of its protections. Further, Shiner-Spagone argues that her claims against the Ellises are not time-barred because she filed them within the applicable statutory period. I find that G.L.c. 260, §2B shields the Ellises from Shiner-Spagone’s claims.
Protected Actor Status
Shiner-Spagone argues that the Ellises, as mere fence installers, are not within the limited class of professionals protected by the statute.[6] See Dighton v. Fed. Pac. Elec. Co., 399 Mass. 687, 694 (1987). G.L.c. 260, §2B does not expressly list specific categories of actors to which it applies. Application of the statute, therefore, is “necessarily dependent on the nature of the parties’ activities.” Snow v. Harnischfeger Corp., 12 F.3d 1154, 1160 (1st Cir. 1993), citing Dighton, 399 Mass. at 694. The court thus determines a defendant’s status by engaging in “a fact-based activities analysis.” Id.
Courts interpreting the statute have generally separated potential defendants into two groups: those with “individual expertise” who “render particularized services for the design and construction of particular improvements to particular pieces of real properly,” and are included under the statute, and “materialmen” and suppliers of construction materials, who are not. Dighton, 399 Mass. at 695, 696. They have further distinguished mere installers of ready-made goods from those who assemble finished products out of raw materials. See Columba v. Filchini Plumbing, 58 Mass.App.Ct. 901, 902 (2003) (one who installs a boiler not within the protected class); Merchants Mut. Ins. v. Face Place, Civil No. 00-558A (Mass.Super.Ct. Feb. 1, 2006) (Troy, J.) [20 Mass. L. Rptr. 511] (installer of florescent light not within protected class). But see McDonough v. Marr Scaffolding Co., 412 Mass 636, 642 (1992) (finding installer of bleachers protected by statute where “it performed particularized construction services in assembling and installing the bleachers”).
In McDonough, the Supreme Judicial Court upheld a trial court’s determination that the installer of two bleacher units in a skating rink was exempt from suit under G.L.c. 260, §2B. 412 Mass. at 642. In reaching its decision, the court noted the trial court’s finding that the defendant had received component parts from the manufacturer, and had then “assembled and erected” the “uniquely configured” bleacher units in the rink. The court further affirmed the trial court’s finding that while not permanent, the bleachers “enhanced the usefulness of the rink and increased its value” and were therefore an “improvement to real property” under §2B. Id.
While acknowledging that prior case law has not commented on §2B’s applicability to fence installers, I find that the Ellises’ services required the type of “individual expertise” necessary to assume protected status under the statute. As in McDonough the Ellises picked up fencing material from a manufacturer and then constructed and installed a finished product on the job site. The Ellises thus performed the type of construction work bringing them within the ambit of G.L.c. 260, §2B.
Improvement to Real Property
I similarly find that the Ellises made an “improvement to real property” as defined in §2B. Under the statute, an improvement to real property is “a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.” Raffel v. Perley, 14 Mass.App.Ct. 242, 245 (1982). The Ellises therefore need only show that the fence increased the usefulness of the Fabroskis’ pool area. See id. at 245 (defining an improvement as something that “make[s] the property more useful or valuable as distinguished from ordinary repairs.”[7] The fence installed by the Ellises allowed the Fabroskis to legally utilize their pool and was therefore useful.
The Six-Year Statutory Period
Lastly, Shiner-Spagone disputes the Ellises’ contention that she filed her claim against them over six years after they completed the fence project. The statute dictates that the plaintiff must bring her claim no more than six years after the earlier of two dates: the “opening of the improvement to use” and the “substantial completion of the improvement and the taking of possession for occupancy by the owner.” G.L.c. 260, §2B. Citing the “substantial completion” *632 language, Shiner-Spagone urges that the statute contemplates completion of the entire project, not merely the date that the Ellises finished installing the fence. Shiner-Spagone urges, therefore, that a factual issue exists as to whether the “swimming pool and its attendant accessories” was completed by November 8, 1999, the day she filed her motion to amend.[8]
I reject Shiner-Spagone’s argument. She has first offered no support for her assertion that the statute did not begin to run when the Ellises finished installing the fence. Second, the plain language of G.L.c. 260, §2B indicates that the particular improvement’s completion date triggers the start of the repose period. The Ellises have asserted that they installed the fence on September 14 and 16, 1999. Even if the Fabroskis were unable to make use of their pool at that time, the Ellises had substantially completed their improvement of the property. See Parent v. Stone & Webster Eng’g Corp., 408 Mass. 108, 110 n.3 (1990) (“If the property owner takes possession of the substantially completed improvement prior to putting it to actual use, the six-year period begins to run on the earlier date”). The Ellises must only satisfy one of the statute’s two options. See McMillan v. Sears, Roebuck & Co., Civil No. 96-1871 (Mass.Super.Ct. Feb. 2, 2000) (Burnes, J.) [11 Mass. L. Rptr. 156). Shiner - Spagone therefore filed her motion to amend well beyond the six-year limit.
For the foregoing reasons, the Ellises’ Motion for Summary Judgment is allowed.
ORDER
It is hereby ORDERED that the Ellises’ Motion for Summary Judgment be ALLOWED.

d/b/a K.J. & Sons Landscaping.

d/b/a Ron’s Fencing.

Randall Ellis was deposed in this case before Shiner - Spagone added him as a party. In his July 12, 2005 deposition, Randall Ellis stated that he could not remember when he installed the fence. In a March 16, 2006 affidavit, however, Ellis asserted that the installation occurred on September 14 and 16, 1999. I do not find this testimony inconsistent. Further, the plaintiff has offered nothing to suggest that the Ellises installed the fence after September 16, 1999.

Where the statute of repose creates an absolute bar on certain claims after six years, it does not permit application of the “relation back doctrine” to amended complaints. See Tindol v. Boston Hous. Auth., 396 Mass. 515, 519 (1986).

I find unpersuasive Shiner-Spagone’s argument that the Ellises’ status as unlicensed fence installers removes them from the protected class of actors under G.L.c. 260, §2B.

Shiner-Spagone states in her opposition that because 780 CMR 421.10.1(8) requires homeowners to enclose their outdoor pools with barriers, the installation of a pool fence cannot constitute an “improvement to real property.” The cases defining “improvement” as used in §2B, however, have stated no such limitation. See Raffel, 14 Mass.App.Ct. at 245.

Shiner-Spagone asserts that as of November 8, 1999, her family had not used the pool, the town had not performed an inspection of the pool, and landscaping work surrounding the pool had not yet been completed.